1

2

3

4

5          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
6                    AT SEATTLE

7    UNITED STATES OF AMERICA,

8                        Plaintiff,

9          v.                                    C17-668 TSZ

10   KOMRON M. ALLAHYARI and             FINDINGS OF FACT AND
     SHAUN ALLAHYARI,                     CONCLUSIONS OF LAW
11
                         Defendants.
12

13          THIS MATTER came on for a bench trial on September 5, 2018.  The plaintiff

14   was represented by Yael Bortnick and Nithya Senra, attorneys for the U.S. Department of

15   Justice, Tax Division.  Defendant Shaun Allahyari was present and represented by Avi

16   Lipman and Curtis Isacke of McNaul Ebel Nawrot & Helgren PLLC.  Defendant Komron

17   Allahyari appeared pro se.  At the conclusion of trial, the Court took the matter under

18   advisement.

19          The IRS filed this action on April 28, 2017.  On June 21, 2017, Shaun Allahyari

20   and Komron Allahyari filed their Answer.  On July 2, 2018, a Stipulation for Entry of

21   Partial Judgment (the "Stipulated Judgment") was entered, thereby reducing Komron

22   Allahyari's tax debt to judgment (docket no. 50).  The Stipulated Judgment resolved

23

Counts One, Two, and Three of the First Amended Complaint (docket no. 29). By

Minute Order dated July 30, 2018 (docket no. 62), the Court granted partial summary

judgment in favor of Shaun Allahyari upholding in first priority the Deed of Trust and

related promissory note ("2003 Deed of Trust") assigned to Shaun Allahyari by the

Boeing Employees Credit Union ("BECU"), senior to the tax liens of the IRS. The Court

reserved for trial the determination of whether the 2005 Deed of Trust claimed by Shaun

Allahyari is a valid lien on the property, whether the 2005 Deed of Trust is entitled to

priority status relative to the IRS's liens, and whether any interest that has accrued on the

amount paid by Shaun Allahyari to BECU to obtain the 2003 Deed of Trust is entitled to

priority over the IRS's liens. Having heard the evidence and reviewed the exhibits

admitted at trial, the Court now makes the following findings and conclusions:

## I. FINDINGS OF FACT

1.      Shaun and Kathryn Allahyari married in 1962. Pretrial Order, docket

no. 85, Admitted Fact (hereinafter "Admitted Fact") ¶ 1.

2.      Shaun and Kathryn Allahyari have three children: Sandra, Komron, and

Karin. *Id.* ¶ 2.

3.      After Komron[1] graduated from law school, Shaun advised him to invest in

real estate. *Id.* ¶ 4.

4.      On April 22, 1991, Komron, Shaun, and Kathryn Allahyari acquired a

parcel of real property located at 3453 77th Place S.E., Mercer Island, Washington 98040

---

[1] Throughout these Findings and Conclusions, the Court will refer to Shaun Allahyari and Komron Allahyari by their first names in order to avoid confusion.

1   (the "Subject Property") via a Statutory Warranty Deed.  *Id.* ¶ 5; Ex. 3.  The Court

2   incorporates by reference the legal description contained in the Statutory Warranty Deed.

3   Ex. 3.

4          5.      The initial purchase price for the Subject Property was $205,000, of which

5   the Allahyaris paid $40,000 as a down payment and borrowed the remainder.  *Id.* ¶ 6.

6          6.      Shaun borrowed $40,000 for the down payment from a line of credit.  *Id.*

7   ¶ 7.

8          7.      Shaun and Komron refer to the $40,000 as a loan from Shaun to Komron

9   ("$40,000 transfer").  *Id.* ¶ 8.  At all times material, both Shaun and Komron understood

10  and agreed this was a loan and not a gift.

11         8.      A promissory note (the "Promissory Note"), which is dated March 29, 1991

12  states that "FOR VALUE RECEIVED ($50,000), Komron" promises to pay Shaun and

13  Kathryn Allahyari "the total sum of this note under the terms and conditions set forth

14  herein."  *Id.* ¶ 9, Ex. 4.

15         9.      The Promissory Note at paragraph 2 provides as follows:

16         2.  <u>PAYMENT:</u> Payment shall be made at the above address via check by
           Maker, upon the occurrence of one or more of the following contingencies:

17

18                 2.1  The principal amount, repaid from Maker's salary at Ulin Dann
                   and Lambe or if the subject real property is rented and there is "net"
                   rental income; or
19

20                 2.2  If Maker starts his own practice, repaid from proceeds of his law
                   practice when the "net" income from the practice exceeds $100,000.

21  Admitted Fact ¶ 10, Ex. 4.

22

23

1      10.     In 2015, the IRS issued a summons to Shaun Allahyari, *see* Declaration of

2 David S. Choi, Ex. 24, to provide testimony and records related to the mortgage held by

3 Shaun with respect to the Subject Property.

4      11.     When Komron and Shaun were interviewed by Internal Revenue Officer

5 John Curt in 2015 in response to the summons described in paragraph 10 of these

6 Findings of Fact, they testified that no payments had ever been made from Komron to

7 Shaun and neither remembered the existence of the Promissory Note.  Ex. 24.

8      12.     Komron worked for Ulin Dann and Lambe for one to two years after he

9 graduated from law school until the firm split up in the early 1990s.  Admitted Fact ¶ 11.

10      13.     Komron started his own practice in January or February of 1993.  *Id.* ¶ 13.

11      14.     Komron made no payments to Shaun for the $40,000 transfer until 1998.

12 Admitted Fact ¶ 18.

13      15.     During the years following the execution of the Promissory Note, however,

14 Shaun regularly requested repayment by Komron.

15      16.     In 1998, Komron settled a large case, for which he received $435,000 in

16 attorney's fees.  *Id.* ¶ 19.

17      17.     After receiving the $435,000 in fees, Komron asked Shaun how much he

18 owed Shaun for the $40,000 transfer.  *Id.* ¶ 20.

19      18.     Shaun told Komron to pay, and Komron paid Shaun $1,069.55 on

20 March 12, 1998, $36,637.46 on June 25, 1998, and $200 on July 9, 1998.  *Id.* ¶ 21.

21

22

23

19.     Both Shaun and Komron understood that these payments represented partial repayment of loans made by Shaun to Komron.  Neither party intended these payments to represent full satisfaction of the debt.

20.     After Komron made the payments described in paragraph 18, Shaun and Kathryn transferred their joint interest in the Subject Property to Komron via quitclaim deed, and the property was then solely owned by Komron.  Admitted Fact ¶ 22; Ex. 8. From September 10, 1999, until at least August 31, 2018, the Subject Property has remained in Komron's name.

21.     Beginning in January 2000, Shaun made a series of additional transfers to Komron (the "post-2000 transfers").  *Id.* ¶ 23; Ex. 101.  At all times material Shaun and Komron intended these post-2000 transfers to be loans and not gifts.  The Court makes no finding as to the total amount of the loans and repayments between Shaun and Komron or the accuracy of Exhibits 101 and 102.

22.     Shaun borrowed from lines of credit he had with US Bank and Washington Mutual Bank to make the loans to Komron.  Admitted Fact ¶ 24.

23.     Komron's financial status in 2000 and thereafter was not good: he had borrowed significant sums against the Subject Property, and he was unable to make payments owed on various debts and business obligations without loans or assistance from his father.  During trial, Komron explained that he had invested heavily in the stock market, lost substantial amounts of money, and took out additional loans to obtain more money to invest.  He also explained that during this time he was sometimes unable to make payments or meet other expenses—for example, Komron received a series of loans

from his father in order to meet his payroll obligations to his employees. By about 2005, Komron owed the IRS more than a million dollars in taxes, penalties, and interest.

24.     An "Addendum and Promissory Note," ("2000 Addendum"), dated February 25, 2000, states as follows: "Komron Allahyari ('Maker') currently owes Shaun Allahyari ('Holder') certain monies with interest (12 percent) to be calculated under a previous Promissory Note dated March 1991 ('Original Note'), but Maker desires to obtain additional loans on the account under the terms and conditions set forth herein. . . . Payment shall be made under the terms of the Original Note with the same 12 percent interest rate on any subsequent loans." Admitted Fact ¶ 25, Ex. 9.

25.     Shaun was always concerned with being repaid for the loans he made to his son, but he was also concerned with seeing Komron succeed in his legal practice and other business endeavors.

26.     In 2003, Komron took out a $400,000 loan from the Boeing Employees' Credit Union ("BECU Loan"), which was secured by a Deed of Trust ("BECU Deed") on the Subject Property. Admitted Fact ¶ 27; Ex. 10.

27.     The BECU Loan included an Adjustable Rate Rider. Admitted Fact ¶ 30.

28.     According to the Adjustable Rate Rider, the BECU note provided for an initial interest rate of 4.375%, which could change on September 1, 2006, and every twelve months thereafter. *Id.* ¶ 31; Ex. 10.

29.     The amount of interest was tied to the weekly average yield on 1-year United States Treasury securities, and could never increase or decrease by more than two percentage points in any year. Admitted Fact ¶ 32; Ex. 10.

30.     The interest rate could never exceed 10.375% and did not establish a minimum interest rate after the first "Change Date" of September 1, 2006. Admitted Fact ¶ 33; Ex. 10.

31.     The Adjustable Rate Rider requires written notice be given to the borrower before a change is made to the payment amount. Admitted Fact ¶ 34.

32.     The BECU Loan had a fixed schedule for repayments, with a maturity date of September 1, 2033. *Id.* ¶ 35.

33.     Komron filed his IRS Forms 1040 (U.S. Individual Income Tax Return) for tax years 1999-2002 and 2004 in April 2005. *Id.* ¶ 36. Prior to the spring of 2005, Komron never told Shaun that he had failed to file tax returns and that he had incurred significant tax liability in those years.

34.     Komron's Forms 1040 filed in 2005 showed taxes owing, but he did not submit payment with his returns. *Id.* ¶ 37.

35.     The IRS made timely assessments against Komron for unpaid income taxes, trust fund recovery penalties, interest, and other statutory additions in the following amounts. *Id.* ¶ 38.

| Tax Period Ending | Tax Type | Assessment Date | Assessment Amount and Type of Assessment | |
|---|---|---|---|---|
| 12/31/1999 | Form 1040 | 07/25/2005 | Tax Assessed | $22,270.00 |
| | | " | Estimated Tax Penalty | $ 861.98 |
| | | " | Late Filing Penalty | $4,135.50 |
| | | " | Failure to Pay Tax Penalty | $4,595.00 |
| | | " | Interest Assessed | $ 8,401.20 |
| | | 11/11/2013 | Interest Assessed | $ 18,760.81 |

| Tax Period Ending | Tax Type | Assessment Date | Assessment Amount and Type of Assessment | |
|---|---|---|---|---|
| 12/31/2000 | Form 1040 | 08/01/2005 | Tax Assessed | $ 60,603.00 |
| | | " | Estimated Tax Penalty | $ 1,056.25 |
| | | " | Late Filing Penalty | $ 13,533.30 |
| | | " | Failure to Pay Penalty | $ 15,037.00 |
| | | " | Interest Assessed | $ 18,825.03 |
| | | 11/11/2013 | Interest Assessed | $ 56,001.61 |
| 12/31/2001 | Form 1040 | 05/30/2005 | Tax Assessed | $ 63,009.00 |
| | | " | Estimated Tax Penalty | $ 2,447.00 |
| | | " | Late Filing Penalty | $ 14,177.02 |
| | | " | Failure to Pay Penalty | $ 11,971.71 |
| | | " | Interest Assessed | $ 12,665.70 |
| | | 11/09/2009 | Failure to Pay Penalty | $ 3,780.54 |
| | | 11/11/2013 | Interest Assessed | $ 55,967.57 |
| 12/31/2002 | Form 1040 | 05/23/2005 | Tax Assessed | $454,994.00 |
| | | " | Late Filing Penalty | $102,373.65 |
| | | " | Failure to Pay Penalty | $59,149.22 |
| | | " | Interest Assessed | $56,210.15 |
| | | 10/24/2005 | Fees and Collection Costs | $77.28 |
| | | 11/09/2009 | Failure to Pay Penalty | $54,599.28 |
| | | 11/11/2013 | Interest Assessed | $366,561.03 |
| | | 07/13/2015 | Fees and Collection Costs | $1,762.00 |
| | | 11/09/2015 | Fees and Collection Costs | $196.00 |
| 12/31/2004 | Form 1040 | 05/23/2005 | Tax Assessed | $141,692.00 |
| | | " | Failure to Pay Penalty | $1,416.92 |
| | | " | Interest Assessed | $887.79 |
| | | 11/08/2010 | Failure to Pay Penalty | $34,006.08 |
| | | 11/11/2013 | Interest Assessed | $80,233.44 |
| 12/31/2005 | Form 1040 | 02/18/2008 | Additional Tax Assessed | $1,023.00 |
| | | | Interest Assessed | $158.79 |
| | | 11/08/2010 | Failure to Pay Penalty | $253.02 |
| | | 11/11/2013 | Interest Assessed | $322.29 |
| 12/31/2006 | Form 1040 | 11/26/2007 | Tax Assessed | $386,959.00 |
| | | " | Estimated Tax Penalty | $709.12 |
| | | " | Failure to Pay Penalty | $14,142.12 |
| | | " | Interest Assessed | $17,870.56 |
| | | 11/08/2010 | Failure to Pay Penalty | $74,246.13 |
| | | 11/11/2013 | Interest Assessed | $112,806.47 |

| Tax Period Ending | Tax Type | Assessment Date | Assessment Amount and Type of Assessment | |
|---|---|---|---|---|
| 12/31/2007 | Form 1040 | 12/08/2008 | Tax Assessed | $47,512.00 |
| | | " | Estimated Tax Penalty | $1,405.39 |
| | | " | Late Filing Penalty | $1,823.89 |
| | | " | Failure to Pay Penalty | $1,621.24 |
| | | " | Interest Assessed | $1,516.03 |
| | | 02/09/2009 | Fees and Collection Costs | $130.00 |
| | | 11/08/2010 | Failure to Pay Penalty | $4,661.06 |
| | | 11/11/2013 | Interest Assessed | $9,585.21 |
| | | " | Failure to Pay Penalty | $3,850.44 |
| 12/31/2008 | Form 1040 | 11/23/2009 | Tax Assessed | $40,838.00 |
| | | " | Estimated Tax Penalty | $990.53 |
| | | " | Late Filing Penalty | $1,799.50 |
| | | " | Failure to Pay Penalty | $1,599.56 |
| | | " | Interest Assessed | $992.46 |
| | | 11/11/2013 | Interest Assessed | $6,561.01 |
| | | " | Failure to Pay Penalty | $8,397.68 |
| 12/31/2009 | Form 1040 | 12/06/2010 | Tax Assessed | $256,719.00 |
| | | " | Estimated Tax Penalty | $1,195.00 |
| | | " | Late Filing Penalty | $11,552.35 |
| | | " | Failure to Pay Penalty | $10,268.76 |
| | | " | Interest Assessed | $6,762.91 |
| | | 04/18/2011 | Fees and Collection Costs | $124.00 |
| | | 08/15/2011 | Failure to Pay Penalty | $10,268.76 |
| | | 11/11/2013 | Interest Assessed | $28,862.29 |
| | | " | Failure to Pay Penalty | $34,657.06 |
| 12/31/2011 | Form 1040 | 11/19/2012 | Tax Assessed | $43,827.00 |
| | | " | Estimated Tax Penalty | $2.00 |
| | | " | Failure to Pay Penalty | $1,753.08 |
| | | " | Interest Assessed | $790.14 |
| | | 03/04/2013 | Fees and Collection Costs | $110.00 |
| 12/31/2012 | Form 1040 | 10/21/2013 | Tax Assessed | $35,666.00 |
| | | " | Estimated Tax Penalty | $639.00 |
| | | " | Failure to Pay Penalty | $1,426.64 |
| | | " | Interest Assessed | $704.53 |
| | | 08/11/2014 | Interest Assessed | $781.80 |
| | | " | Failure to Pay Penalty | $2,318.29 |
| | | 03/23/2015 | Fees and Collection Costs | $190.00 |
| 12/31/2013 | Form 1040 | 12/01/2014 | Tax Assessed | $44,193.00 |
| | | " | Estimated Tax Penalty | $783.00 |
| | | " | Failure to Pay Penalty | $1,767.72 |
| | | " | Interest Assessed | $843.34 |
| 03/31/2000 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $4,561.47 |
| | | 01/08/2007 | Fees and Collection Cost | $128.00 |
| | | 09/15/2008 | Fees and Collection Costs | $84.00 |
| | | 09/22/2008 | Fees and Collection Costs | $222.00 |
| | | 11/11/2013 | Interest Assessed | $2,290.90 |

| Tax Period Ending | Tax Type | Assessment Date | Assessment Amount and Type of Assessment | |
|---|---|---|---|---|
| 06/30/2000 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $8,857.80 |
| | | 11/11/2013 | Interest Assessed | $4,233.57 |
| 09/30/2000 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $7,787.98 |
| | | 11/11/2013 | Interest Assessed | $3,722.24 |
| 12/31/2000 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $7,625.42 |
| | | 11/11/2013 | Interest Assessed | $3,644.55 |
| 03/31/2001 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $8,152.07 |
| | | 11/11/2013 | Interest Assessed | $3,896.25 |
| 06/30/2001 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $8,768.26 |
| | | 11/11/2013 | Interest Assessed | $4,190.76 |
| 09/30/2001 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $7,248.18 |
| | | 11/11/2013 | Interest Assessed | $3,464.26 |
| 12/31/2001 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $10,300.50 |
| | | 11/11/2013 | Interest Assessed | $4,923.10 |
| 03/31/2002 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $14,143.78 |
| | | 11/11/2013 | Interest Assessed | $6,760.00 |
| 06/30/2002 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $13,758.21 |
| | | 11/11/2013 | Interest Assessed | $6,575.70 |
| 09/30/2002 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $11,292.47 |
| 12/31/2002 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $15,515.74 |
| 03/31/2003 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $12,623.06 |
| 06/30/2003 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $10,714.31 |
| 09/30/2003 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $11,429.95 |
| 12/31/2003 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $13,593.27 |
| 03/31/2004 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $11,075.32 |
| 06/30/2004 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $13,577.70 |
| 09/30/2004 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $14,805.35 |
| 12/31/2004 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $21,019.23 |
| 03/31/2005 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $16,618.73 |
| 06/30/2005 | § 6672 | 12/19/2005 | Trust Fund Recovery Penalty | $7,028.11 |

36. Despite proper notice and demand for payment of the assessments, Komron has neglected, failed, or refused to make payment in full of the assessed amounts to the United States. *Id.* ¶39.

37. There remains due and owing the sum of $3,910,470.35 plus accrued statutory interest and additions from June 14, 2018, less payments or credits. Komron has stipulated to Judgment in this action for the full amount of the assessments. *Id.* ¶ 40. A partial judgment has now been entered against Komron for these amounts.

38.     For each tax period, a federal tax lien arose and became choate on the date of assessment.  Federal tax liens arose and attached to the Subject Property on May 23, 2005, for tax years 2002 and 2004, on May 30, 2005, for tax year 2001, and on July 25, 2005, for tax year 1999.  *Id.* ¶ 38.

39.     Komron filed his federal income tax returns for 1999-2002 and 2004, which reported large balances due, and told Shaun that he had outstanding tax liabilities.  *Id.* ¶ 41.

40.     Shaun was concerned that the United States would be able to foreclose its tax liens on the Subject Property.  *Id.* ¶ 42.

41.     A Deed of Trust was recorded on July 26, 2005 (hereinafter, the "2005 Deed of Trust").  Ex. 13.  The 2005 Deed of Trust purports to secure payment of $471,322.00 at 12 percent interest.  *Id.*

42.     In both his deposition and at trial, Shaun testified that he paid no money to Komron at or around the time of the 2005 Deed of Trust.  Transcript of Deposition of Shaun Allahyari, docket no. 41-1, p. 30.

43.     Shaun executed the 2005 Deed of Trust to "make sure [he was] going to be ahead of the IRS."  Because he knew Komron was delinquent on his taxes and that the IRS wanted payment, Shaun retained an attorney who advised him that "the IRS is going to come and take the house and so you're going to lose your interests in the house" and recommended a deed of trust.

44.     Komron informed his father of his tax liabilities prior to the 2005 Deed of Trust, and Komron believed Shaun "was informed about the tax liabilities and was

concerned of the consequences of those liabilities."[2]  Transcript of Deposition of Komron

Allahyari, docket no. 41-1, p. 65 ("In general I would say at some point I alerted my

father to the fact that I had tax problems.  I owed a lot of taxes.  I owed a lot of money to

the IRS, and I recall him being almost immediately concerned about the IRS being able to

take the home that he had, you know, used as security for his loans.  I think he even asked

me can they take your home, and I said well, maybe.  I don't know.  So he asked – I think

he asked me, what – do I have security on the home?  How do I get it?").

45.     Prior to obtaining the 2005 Deed of Trust, Shaun believed Komron owed a

"lot" of money to the IRS.  He believed the tax liability might exceed $1,000,000.

46.     On October 4, 2005, the first Notice of Federal Tax Lien was filed in King

County, Washington, against Komron M. Allahyari and Leslie R. Cover (Komron's then-

spouse) that listed their federal income tax liabilities for tax years 1999-2001, 2002, and

2004.  Additional Notices of Federal Tax Lien were filed in King County on the dates

and for the periods stated in the United States' First Amended Complaint.  Admitted Fact

¶ 44; Ex. 30.

47.     In 2010, Shaun learned that Komron was defaulting on the BECU Deed and

was at risk of losing the Subject Property.  Admitted Fact ¶ 45.

---

[2] The Court finds Komron's trial testimony not credible to the extent he minimized his own involvement
in drafting the 2005 Deed of Trust and to the extent he suggested the transfer was done without intent to
hinder, delay, or defraud the United States. Komron lied to his own father regarding the extent of his
financial troubles in the 1990s and early 2000s, he lied to his own lawyer regarding the existence of the
1991 Promissory Note (Ex. 155), and he continues to offer conflicting accounts of his involvement in
drafting the 2005 Deed of Trust (compare docket no. 41-1, p. 65-66 ("[Jamie Olander] and I kind of
worked [the deed of trust] up and then showed my father and then we filed it.") with his testimony at trial
that he had no involvement in the preparation of the Deed of Trust).

48.     Shaun borrowed money in order to pay off the BECU Loan and take an assignment of that loan in order to prevent foreclosure of the Subject Property. *Id.* ¶ 46. Shaun also was aware of Komron's outstanding tax liabilities and that Komron had defaulted on the BECU Loan—resulting in multiple foreclosure proceedings.

49.     A "Second Addendum to Promissory Note" is dated August 15, 2010 ("2010 Addendum").  Admitted Fact ¶ 48; Ex. 16.

50.     The 2010 Addendum states,

> Shaun Allahyari hereby desires to take an assignment of the mortgage on the real property and pay off the prior mortgage (BECU) to protect Shaun's interest in the 2005 Deed of Trust.
>
> Komron agrees that any funds Shaun Allahyari pays to take an assignment of the prior mortgage with BECU is to be considered part of the ongoing loans to Komron and will be paid back at 12 percent interest under the terms of the previous Promissory Note(s).

Admitted Fact ¶49; Ex. 16.

51.     An Assigmnent of Deed of Trust was recorded on September 8, 2010 ("2010 Assignment").  Admitted Fact ¶ 50; Ex. 14.

52.     Shaun never gave Komron written notice of a change in the interest rate for the BECU Loan.

53.     Komron stopped taking new cases and wound down his law practice in spring or summer 2010.  He resigned from the Washington State Bar Association in lieu of disbarment in 2011.

54.     Komron currently resides in an apartment owned by Shaun, and pays no rent to Shaun for the apartment other than working part-time for Shaun.

1          55.     Komron and Shaun were summoned to appear before IRS Revenue Officer

2   John Curt in summer 2015 to testify regarding Shaun's interest in the Subject Property.

3   Ex. 24.  Komron and Shaun told Curt that no written contract existed between Shaun and

4   Komron for any of the amounts transferred from Shaun to Komron.  *Id.*[3]  Shaun also told

5   Curt that no specific amount of repayment was discussed but payment was to be made at

6   some point in the future.  *Id.*  Shaun explained to Curt that he originally required a 12%

7   interest rate but lowered the interest rate to 8% to give Komron a break.  *Id.*

8                              **II. CONCLUSIONS OF LAW**

9          1.      Any Conclusion of Law denominated as a Finding of Fact shall be deemed

10  a Conclusion of Law and any Finding of Fact denominated as a Conclusion of Law shall

11  be deemed a Finding of Fact.

12         2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340

13  and 1345, and 26 U.S.C. § 7402.

14         3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1396

15  because defendants reside in this district and the Subject Property is located in this

16  district.

17         4.      The United States has established that, on the various dates of assessment,

18  valid liens in favor of the United States arose against Komron M. Allahyari and attached

19

20

21  ───────────────

22  [3] At trial, Shaun testified that he did not remember his interview with John Curt.  Therefore, Shaun's trial testimony is not credible to the extent he attempts to dispute the accuracy of Curt's notes regarding that interview.

23

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 14

1  to all of his property and rights to property, whether real or personal, including the

2  Subject Property at issue in this case.  26 U.S.C. § 6321.

3      5.      The tax lien continues in full force until the liability is paid in full or

4  becomes unenforceable due to the lapse of time.  26 U.S.C. § 6322.

5      6.      The Court finds that the transfers from Shaun to Komron beginning in 1991

6  through 2005 were bona fide loans, not gifts.  The Promissory Note and Addenda

7  underlying the 2005 Deed of Trust do not contain illusory promises to pay.  Repayment

8  was not solely within Komron's discretion, and the contingencies requiring repayment

9  occurred.  Shaun regularly and repeatedly requested repayment.  *See Vancouver Clinic,*

10 *Inc. v. United States*, 2013 WL 1431656, at *2 (W.D. Wash. Apr. 9, 2013) (holding that

11 for a transaction to constitute a bona fide loan, "there must be an unconditional promise

12 to repay at the time the funds are advanced") (citations omitted).

13     7.      Komron repaid significant sums to Shaun between 1991 and 2005

14 providing additional evidence that the transfers were bona fide loans.  Ex. 102; *Calumet*

15 *Indus., Inc. & Subsidiaries v. Comm'r*, 95 T.C. 257, 286 (1990); *Van Anda v. Comm'r*, 12

16 T.C. 1158, 1162 (1949); *In re Estate of Miller*, 134 Wn. App. 885, 895, 143 P.3d 315

17 (2006).

18     8.      Under 26 U.S.C. § 6321, a lien arises in favor of the United States "upon all

19 property and rights to property, whether real or personal," belonging to a taxpayer who

20 has refused or neglected to pay tax after demand.

21

22

23

1      9.     The lien arises "at the time the assessment is made" and continues "until

2  the liability for the amount so assessed . . . is satisfied or becomes unenforceable by

3  reason of lapse of time."  26 U.S.C. § 6322.

4      10.     Tax liens arising from assessments are enforceable without the recording of

5  a notice of lien and have priority over all interests in property acquired after the

6  attachment of the tax liens, except as provided by 26 U.S.C. § 6323(a).  *United States v.*

7  *City of New Britain*, 347 U.S. 81, 84 (1954) (federal tax liens are choate and perfected

8  under federal law as soon as they arise upon assessment).

9      11.     In general, federal law follows the principle that first in time is first in right.

10  However, another statute, 26 U.S.C. § 6323, protects certain third parties from the effect

11  of the government's automatic lien.  It provides that a federal tax lien "shall not be valid

12  as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien

13  creditor until" notice of the lien is duly recorded.  26 U.S.C. § 6323(a).  The only

14  category of Section 6323(a) into which Shaun could possibly fall is that of "holder of

15  security interest."

16      12.     The United States' federal tax liens for tax years 1999, 2001, 2002, and

17  2004 arose before the 2005 Deed of Trust was filed and therefore are entitled to priority

18  unless Shaun is entitled to the protection of 26 U.S.C. § 6323(a).

19      13.     A person seeking protection from federal tax liens under 26 U.S.C.

20  § 6323(a) has the burden of showing that he qualifies for that protection.  *In re Nerland*

21  *Oil, Inc.*, 303 F.3d 911, 920 (8th Cir. 2002).  Shaun has failed to establish that he

22  qualifies for that protection.

23

14.     A security interest exists only where (1) the interest was "acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability"; (2) the interest is "protected under local law against a subsequent judgment lien arising out of an unsecured obligation"; and (3) the interest holder "parted with money or money's worth."  26 U.S.C. § 6323(h)(1); *see also* Treas. Reg. § 301.6323(h)-1(a)(1)(i)-(ii).

15.     The 2005 Deed of Trust is not entitled to priority over the federal tax liens because Shaun cannot meet his burden to show that he is a holder of a security interest for two reasons.

16.     First, the 2005 Deed of Trust is not entitled to priority under local law with respect to the tax liens described in Findings of Fact 35-38 because Shaun had actual and/or constructive knowledge of Komron's tax liabilities prior to recording the 2005 Deed of Trust.  *Kim v. Lee*, 31 P.3d 665, 668, *as amended* (Dec. 12, 2001), *opinion corrected*, 43 P.3d 1222 (Wash. 2001).  Shaun and Komron both testified that the purpose of drafting, executing, and recording the 2005 Deed of Trust was to get ahead of the IRS with respect to Shaun's interest in the Subject Property.

17.     Second, Shaun did not part with money or money's worth in connection with the granting or recording of the 2005 Deed of Trust.  While the 2005 Deed of Trust purported to secure preexisting debts, Shaun did not contemporaneously part with money or money's worth.  *United States v. 3809 Crain Ltd. P'ship*, 884 F.2d 138, 143 (4th Cir.

1989); *In re Marine Energy Sys. Corp.*, 2009 WL 1465352, at * 13 (Bankr. D.S.C. Mar. 24, 2009), aff'd, 430 B.R. 348 (D.S.C. 2010).[4]

18.    Because Shaun does not qualify as a holder of a security interest, he is not entitled to the protection of 26 U.S.C. § 6323.  As a result, the United States is entitled to priority for the tax liens that arose before the 2005 Deed of Trust was recorded.

19.    Separately, the Subject Property was fraudulently encumbered by Komron Allahyari with the 2005 Deed of Trust.  The encumbrance is voidable under Washington's Uniform Fraudulent Transfer Act because Komron intended to "hinder, delay, or defraud" the United States.  RCW § 19.40.041(a)(1).

20.    The Court finds that the majority of factors under RCW § 19.40.041(a)(1) support the conclusion that Komron acted to hinder, delay, and defraud the United States.

   a.    The transfer was made to an insider – Komron's father.

   b.    Komron retained possession of the property at the time of and after the transfer.  In later years, although Komron moved out of the Subject Property, his immediate family members—also relatives of Shaun's—remain in possession.

---

[4] Defendants also raised at trial a new argument that the 1991 Promissory Note, standing alone, was sufficient security to establish priority over the unrecorded federal tax liens.  That argument is not well-taken.  The Promissory Note was executed prior to closing on the Subject Property, indicating that the parties were in no position to transfer any interest in the property or otherwise encumber the property.  That the 1991 Promissory Note apparently sought to grant Shaun a *right* to later file and record a security interest in the Subject Property is not the equivalent of actually transferring a security interest.  RCW § 64.04.010 ("Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed . . . .").

c. Komron concealed documents he now claims are related to the transfer (e.g., the 1991 Promissory Note) from the IRS during administrative proceedings.[5]

d. The transfer was of substantially all of Komron's assets. Komron was already deeply in debt and unable to make various payments as they became due in the early 2000s. *See* Finding of Fact 21. By 2003, his position had worsened, and he had taken out another mortgage against the Subject Property, which was the same property Komron used as security for the 2005 Deed of Trust.

e. The transfer occurred after Komron was threatened with legal action by the IRS. It would have been abundantly clear to Komron that enforcement proceedings were likely, and that a civil action could result from his failure to pay taxes. The Court finds and concludes the 2005 Deed of Trust was prepared and filed for the express purpose of attempting to gain priority over the IRS with respect to the Subject Property.

f. The transfer occurred shortly before and shortly after a substantial debt was incurred—i.e. the tax liabilities at issue, which were assessed both shortly before and shortly after the 2005 Deed of Trust was filed.

---

[5] Komron's testimony that he simply forgot about the 1991 Promissory Note and the 2005 Deed of Trust when interviewed by IRS officers is not credible.

g. At the time of the transfer, Komron was generally not paying his debts as they became due, and under Washington law he was presumptively insolvent. RCW § 19.40.021(2).

21. Plaintiff has established the elements of a fraudulent transfer by a preponderance of the evidence.

22. That the transfer purported to be made in connection with a preexisting obligation (i.e. the 1991 Note) does not outweigh the evidence demonstrating a fraudulent transfer. *Martin v. McEvoy*, 1996 WL 335996 (Wash. Ct. App. June 17, 1996); *see also In re Fleming*, 1997 WL 111302, at *8 (Bankr. D. Md. Jan. 7, 1997) (involving similar factors under Maryland law and similar facts such as ongoing dependence on family members for financial support, negligible assets at the time of the transfer, tax liabilities pending at the time of the transfer, and the debtor remaining in possession after the transfer).

23. Because the encumbrance was recorded by Komron and Shaun with the actual intent to hinder, delay, or defraud the United States it is voidable and is subject to being set aside. *United States v. Sygitowicz*, 2016 WL 3438489 (W.D. Wash. June 23, 2016); *United States v. Smith*, 2012 WL 1977964 at *6 (W.D. Wash. June 1, 2012); *United States v. Black*, 725 F. Supp. 2d 1279, 1292 (E.D. Wash. July 16, 2010); *see also Clearwater v. Skyline Const. Co., Inc.*, 67 Wash. App. 305, 317 (Wash. Ct. App. Aug. 31, 1992) ("A creditor's remedies for fraudulent transfer include, *inter alia,* avoidance of the transfer or the attachment of the transferred property.").

1  24.  Because the Court concludes that the 2005 Deed of Trust is not entitled to

2  priority over the federal tax liens pursuant to 26 U.S.C. § 6323 and is separately voidable

3  as a fraudulent transfer under RCW 19.40.041, the Court need not determine whether

4  Shaun is entitled to simple or compound interest on the 2005 Deed of Trust.  Nor does the

5  Court need to determine the precise amount of the debt purportedly secured by the 2005

6  Deed of Trust, other than to conclude that any security would not be prior to the BECU

7  Loan and the federal tax liens, respectively.

8  25.  Shaun is entitled to priority over the United States' federal tax liens with

9  respect to interest that has accrued on the amount Shaun paid to BECU.

10  26.  Shaun stepped into BECU's "shoes" when he purchased the BECU Loan.

11  The Court finds that the actual substance of the assignment indicates a bona fide debt,

12  which Shaun and Komron intended to be repaid.  Because Shaun never provided Komron

13  with written notice of any change in the applicable interest rate, he has not proven that he

14  is entitled to a rate any different than the 4.125% rate in effect at the time of assignment.

15  Ex. 110.

16  27.  The total interest on the BECU Loan is $127,721.52 as of September 30,

17  2018, calculated at 4.125% annually.

18  28.  Shaun did not modify the BECU Loan in any manner materially prejudicial

19  to the United States' interests in the Subject Property.  He neither changed the interest

20

21

22

23

rate, nor modified the terms of the Loan in other ways that have substantially impaired

the United States' interests or effectively destroyed its equity.[6]

29.     The Court makes no conclusion regarding whether Shaun is entitled to

recover attorney's fees from Komron for work related to the BECU Loan.  Regardless,

Shaun has not argued—let alone proven—that those fees would be entitled to priority

over the United States' tax liens.  The Court concludes that Shaun is not entitled to

attorney's fees against the United States in connection with the BECU Loan and this

litigation.

30.     Under 26 U.S.C. § 7403, once it is established that the United States has

liens upon certain property, the United States may foreclose those liens, sell the property,

and apply the proceeds toward the tax liens at issue.  *United States v. Craft*, 535 U.S. 274

(2002); *United States v. Rodgers*, 461 U.S. 677, 693-94 (1983).

31.     This is true even if a third party, along with the delinquent taxpayer, holds

an interest in the encumbered real property.  26 U.S.C. § 7403; *Rodgers*, 461 U.S. at 699-

700.

32.     Under *Rodgers*, district courts have limited discretion to not order a

foreclosure sale under 26 U.S.C. § 7403.  *Rodgers*, 461 U.S. at 706-712.

---

[6] The United States alludes to other potential alterations to the BECU Loan—including Shaun's failure to enforce the repayment schedule and other terms related to payment for escrow items—but fails to connect those alleged alterations to any quantifiable injury to the United States.  As such, the United States has failed to demonstrate substantial impairment sufficient to overcome the BECU Loan's priority position.

33.     The discretion to preclude foreclosure "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711.

34.     Defendants have failed to carry the burden of proof that this Court should exercise discretion not to issue a foreclosure order.

35.     The United States has established that it has valid federal tax liens against the Subject Property, and therefore the United States is entitled to judgment and to foreclose those liens, sell the Subject Property, and apply the proceeds toward its tax liens. 26 U.S.C. § 7403.

36.     Pursuant to 26 U.S.C. § 6323(b)(6) and the stipulation filed in this case (docket no. 17), the United States recognizes the superior interest of King County in the Subject Property by virtue of any assessed and owing real property taxes or special assessments that may be owing at the time of sale. The United States shall include in any proposed order of sale a provision that the net proceeds for sale, defined as the proceeds resulting from the sale of the property less distribution to the United States for the costs of sale, shall be applied to satisfy any amounts entitled to priority under 26 U.S.C. § 6323(b)(6) that are assessed and owing to King County for the Subject Property prior to application of the funds to fully or partially satisfy the United States' interest secured by federal tax liens.

37.     Pursuant to the Court's Minute Order (docket no. 63), the Court has found that Shaun is entitled to the same priority position that BECU held with respect to the amount that he paid to BECU for an assignment deed of trust. The Court now finds that

Shaun is entitled to the same priority position for the interest accrued on the BECU Loan as set forth in Conclusion of Law 27. Any proposed order of sale shall include a provision that after the costs of sale and any amount due and owing to King County, Shaun is entitled to the next $510,766.26[7] of the proceeds of the sale of the Subject Property based on the 2010 Assignment of Deed of Trust.

38. The United States is entitled to the remainder of the proceeds of the sale of the Subject Property until the United States' tax liens are satisfied.

39. The United States is entitled to costs and fees herein.

Based on the foregoing Findings of Fact and Conclusions of Law, the United States of America is directed to file a proposed final judgment and proposed order for judicial sale within seven (7) days of entry of these Findings of Fact and Conclusions of Law. Defendants shall have seven (7) days after such filings to file any objections to the proposed judgment and order of sale.

IT IS SO ORDERED.

Dated this 13th day of September, 2018.

_____
Thomas S. Zilly
United States District Judge

[7] This total reflects the principal and interest on the BECU Loan.