UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>  v.<br><br>KOMRON M. ALLAHYARI; and<br>SHAUN ALLAHYARI,<br><br>           Defendants. | C17-668 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on remand from the United States Court of Appeals for the Ninth Circuit. See Mandate (docket no. 174); Opinion (docket no. 167). The parties have submitted briefing, docket nos. 177 and 179–81, pursuant to this Court's Minute Order, docket no. 176. Having reviewed all the briefing, the Court enters the following Order.

**Background**

As the parties are familiar with the facts of this case, the Court gives only a brief overview of the relevant procedural history. On September 13, 2018, this Court entered Findings of Fact and Conclusions of Law ("FFCL") after a two-day bench trial. FFCL (docket no. 94). The Court determined that: (1) Defendant Shaun Allahyari ("Shaun")[1] did not qualify for protection under 26 U.S.C. § 6323(a) because he knew of Komron's

---

[1] As Defendants Shaun and Komron Allahyari share the same last name, the Court refers to them by their first names for clarity.

ORDER - 1

tax liabilities prior to recording the 2005 Deed of Trust[2] and because he did not part with "money or money's worth" in connection with the granting or recording of the 2005 Deed of Trust, (2) the Subject Property[3] was fraudulently encumbered by Komron with the 2005 Deed of Trust, which is therefore voidable under Washington's Uniform Fraudulent Transfer Act, and (3) Shaun is entitled to the same priority position that Boeing Employees Credit Union ("BECU") held with the respect to the amount that he paid to BECU for an assigned deed of trust (the "BECU Deed of Trust").  Conclusions of Law ("CL") Nos. 15–17, 19–23, 25–26, & 37.

The parties cross-appealed to the Ninth Circuit.  Notice of Appeal (docket no. 103); Notice of Cross-Appeal (docket no. 117).  The Ninth Circuit held that § 6323(a) protects security interests acquired with or without knowledge of unfiled or later filed tax liens and that this Court erred by failing to consider whether past consideration was sufficient to give rise to a security interest under Washington law.  United States v. Allahyari, 980 F.3d 684, 689–91 (9th Cir. 2020).  The Ninth Circuit also held that this Court applied the incorrect standard of proof under Washington's Uniform Fraudulent Transfer Act and that the United States could assert any affirmative defenses that would be available to Komron regarding the BECU Deed of Trust.  Id. at 692–94.  The Ninth Circuit remanded for (1) reconsideration of whether Shaun had parted "with money or

---

[2] "2005 Deed of Trust" means the Deed of Trust dated July 12, 2005, identifying Komron and his former wife as grantors and Shaun as the beneficiary.  Ex. 13 (docket no. 52-1 at 28–33).

[3] "Subject Property" refers to the parcel of real property located at 3453 77th Place S.E., Mercer Island, Washington 98040.  FFCL at 2–3.

ORDER - 2

money's worth" when acquiring the 2005 Deed of Trust, (2) application of the correct standard of proof regarding Washington's Uniform Fraudulent Transfer Act, and (3) recalculation of the value of the senior lien. See id. at 686.

On remand, the Court set a briefing schedule and directed the parties to address the following issues:

> (1) whether Shaun Allahyari parted "with money or money's worth" when acquiring the 2005 Deed of Trust under Washington law; (2) whether the 2005 Deed of Trust was a fraudulent transfer, applying the clear and substantial proof standard, under Washington law; (3) the effect of the six-year statute of limitations when calculating the value of Shaun Allahyari's senior lien under the BECU Deed of Trust; (4) whether and to what extent the Court can decide these issues without further hearing or trial; and (5) if a further hearing or trial is necessary, when the parties will be prepared to proceed to a hearing, how long any hearing is likely to last, the number of witness [sic] each side is likely to call, whether the parties agree to conduct the trial virtually, and setting forth any issues that might affect the case schedule.

Minute Order at ¶ 2 (docket no. 176).  The parties submitted their briefing, both sides indicated that the Court could decide the issues on remand without further fact-finding, hearing, or trial,[4] and neither party challenged the Court's factual findings on appeal. Thus, the Court incorporates its previous factual findings to this Order.

//

//

---

[4] Although Shaun states in his Opening Brief that no fact-finding is necessary to resolve whether the 2005 Deed of Trust is a fraudulent transfer, Shaun contends in his Reply that a short evidentiary hearing related to the RCW 19.40.041 factors might be of assistance to the Court.  Opening Br. at 15–16 (docket no. 177); Allahyari Reply at 12 (docket no. 180).  The Court determines that an evidentiary hearing would not be of assistance and declines to hold one.

ORDER - 3

**Discussion**

**I.   Fraudulent Transfer**

In Washington, a transfer is fraudulent if the debtor makes it "[w]ith actual intent to hinder, delay, or defraud any creditior[.]" RCW 19.40.041(1)(a).  To determine whether a debtor acted with actual intent to defraud, the Court must consider the following nonexclusive list of eleven factors, or "badges of fraud":

(a)  The transfer or obligation was to an insider;

(b)  The debtor retained possession or control of the property transferred after the transfer;

(c)  The transfer or obligation was disclosed or concealed;

(d)  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e)  The transfer was of substantially all the debtor's assets;

(f)  The debtor absconded;

(g)  The debtor removed or concealed assets;

(h)  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i)  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j)  The transfer occurred shortly before or shortly after a substantial debt was incurred;

(k)  The debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

RCW 19.40.041(b).  Proof of actual intent to defraud must be presented by clear and satisfactory proof.  Clearwater v. Skyline Constr. Co., Inc., 67 Wn. App. 305, 321, 835 P.2d 257 (1992); see Allahyari, 980 F.3d at 692.  Regarding fraudulent transactions, clear

ORDER - 4

and satisfactory evidence is that which convinces the mind that the conveyance is in reality fraudulent. Allahyari, 908 F.3d at 692 (quoting Rohrer v. Snyder, 29 Wn. 199, 206, 69 P. 748 (1902)). "[T]he burden of proof rests on the party alleging the fraudulent transfer." Sedwick v. Gwinn, 73 Wn. App. 879, 885, 873 P.2d 528 (1994).

The Court concludes that the United States has met its burden to demonstrate that the 2005 Deed of Trust was a fraudulent transfer by clear and satisfactory proof. Under the clear and satisfactory standard, a majority of the factors listed in RCW 19.40.041(b) support the conclusion that Komron acted to hinder, delay, and defraud the United States. Specifically, the United States established the following seven factors by clear and satisfactory proof: (a) Komron transferred the property to an insider, his father, (b) Komron retained possession of the property at the time of and after the transfer,[5] (c) Komron concealed a document he now claims is related to the transfer, namely, the 1991 Promissory Note, from the IRS during administrative proceedings,[6] (d) the transfer occurred after Komron was threatened with legal action by the IRS, (e) the transfer was of substantially all of Komron's assets, (i) at the time of the transfer, Komron was generally not paying his debts as they became due and was presumptively insolvent under

---

[5] Although, in later years, Komron moved out of the property, his immediate family members remained in possession.

[6] As stated in the Court's FFCL, "Komron's testimony that he simply forgot about the 1991 Promissory Note and the 2005 Deed of Trust when interviewed by IRS officers is not credible." FFCL at 19 n.5 (docket no. 94).

ORDER - 5

RCW 19.40.021(2)[7], and (j) the transfer occurred shortly before and shortly after a substantial debt was incurred.

Shaun's argument that the 2005 Deed of Trust was not a fraudulent conveyance because it was made pursuant to the 2000 Addendum is not persuasive. Washington law "does not preclude a finding of actual intent to defraud when a transfer is made to a creditor for an antecedent debt." Martin v. McEvoy, No. 34253-1-I, 1996 WL 335996, at *5 (Wash. Ct. App. June 17, 1996). Shaun also contends that the Court considered the wrong facts in its FFCL by basing its conclusion on the indicia of fraud apparent in 2005. Opening Br. at 9 (docket no. 177). But "[i]t is the [debtor's] intent *at the time of the conveyance* which is relevant." United States v. Nichols, No. 13-cv-0167, 2015 WL 13047134, at *3 (E.D. Wash. Mar. 10, 2015) (emphasis added). Shaun contends "that Komron's only volitional act with respect to the 2005 Deed of Trust came in 2000 when Komron agreed to the 2000 Addendum." Opening Br. at 9 (emphasis removed). But the 2005 Deed of Trust was prompted after Komron went to Shaun in 2005 and told him of his outstanding tax liabilities. Additionally, the Court found "Komron's trial testimony not credible to the extent he minimized his own involvement in drafting the 2005 Deed of Trust and to the extent he suggested the transfer was done without intent to hinder, delay, or defraud the United States." FFCL at 12 n.2.

---

[7] Shaun argues that Komron was not insolvent in 2005 because income from his law practice made him capable of paying his debts even though "Komron squandered some of his income as it came in." Allahyari Reply at 8 (docket no. 180). When a debtor is presumed insolvent under RCW 19.40.021, the debtor has the burden of proving that the nonexistence of insolvency is more probable than its existence. RCW 19.40.021(b). Shaun's arguments fail to establish that Komron has met his burden of proof.

ORDER - 6

Since the 2005 Deed of Trust was recorded with actual intent to hinder, delay, or defraud the United States, it is voidable and subject to being set aside.[8] United States v. Sygitowicz, No. C15-405, 2016 WL 3438489, *6 (W.D. Wash. June 23, 2016); United States v. Smith, No. C11-5101, 2012 WL 1977964, *6 (W.D. Wash. June 1, 2012); United States v. Black, 725 F. Supp. 2d 1279, 1292 (E.D. Wash. July 16, 2010); see also Clearwater, 67 Wash. App. at 317 ("A creditor's remedies for fraudulent transfer include, *inter alia,* avoidance of the transfer or the attachment of the transferred property."). Furthermore, because the Court concludes that the 2005 Deed of Trust is voidable as a fraudulent transfer under RCW 19.40.041, the Court need not determine whether Shaun is entitled to simple or compound interest on the 2005 Deed of Trust or calculate the precise amount of the debt purportedly secured by the 2005 Deed of Trust; the Court must only and does conclude that any security related to the 2005 Deed of Trust would not be prior to the BECU Loan or the federal tax liens, respectively.[9]

## II. Recalculation of BECU Loan

In its opinion, the Ninth Circuit held that, via a § 7403 action, the United States stepped into Komron's shoes and could assert, with respect to the BECU Deed of Trust, the defense that some past-due payments are barred by the six-year statute of limitations.

---

[8] Because the Court determines that the 2005 Deed of Trust was a fraudulent transfer using the badges of fraud from RCW 19.40.041(b), it need not address the United States' alternative argument that the 2005 Deed of Trust was constructively fraudulent.

[9] Because the Court concludes that the 2005 Deed of Trust is voidable as a fraudulent transfer, the Court need not address whether Shaun had parted "with money or money's worth" when acquiring the 2005 Deed of Trust.

ORDER - 7

Allahyari, 980 F.3d at 693.  On remand, the parties debate whether, pursuant to RCW 4.16.170, the filing of this lawsuit by United States tolled the statute of limitations for the loan secured by the BECU Deed of Trust.  For ease of discussion, the promissory note and deed of trust will collectively be referenced as the "BECU Deed of Trust."

The parties agree that a six-year statute of limitations applies to the BECU Deed of Trust.  Opening Br. at 20; Resp. Br. at 18 (docket no. 179); see also RCW 4.16.040(1). Under Washington law, "the six-year statute of limitations on an installment promissory note is triggered by each missed monthly installment payment at the time it is due." Cedar West Owners Ass'n. v. Nationstar Mortg., LLC, 7 Wn. App. 2d 473, 476, 434 P.3d 554 (2019).  The statute of limitations tolls, however, if a complaint is filed and served on at least one proper defendant within 90 days.  RCW 4.16.170.  Washington courts have also held "that the filing of the original lawsuit satisfies the requirements of the statute of limitations both as to the claim as originally stated, or as it may be amended, and also as to any counterclaims within the lawsuit."  Steinberg v. Seattle-First Nat'l Bank, 66 Wn. App. 402, 405–06, 832 P.2d 124 (1992).  Thus, "by joining the defendant and putting his competing right to the same collateral at issue, a plaintiff waives his right to assert the statute of limitations."  Bennett v. Dalton, 120 Wn. App. 74, 81, 84 P.3d 265 (2004).

The United States argues that the statute of limitations continues to run on the missed payments related to the BECU Deed of Trust because Shaun has not brought any claims against Komron.  This view is incorrect.  The United States' filing of its complaint and joining of Shaun as a co-defendant tolled the statute of limitations on all lienholder

interests.  Under Washington law, when "the primary action was started within the lien's statute of limitation, a timely counterclaim filed in the same action would not be barred even if filed after the limitation period had expired."  Pearl v. Greenlee, 76 Wn. App. 338, 342, 887 P.2d 405 (1994).  This procedural rule makes sense only if the statute of limitations tolls upon the filing of the complaint for all related liens.  The Court concludes that the statute of limitations on the claims that Komron breached the terms of the BECU Deed of Trust stopped running on April 28, 2017, the date the United States filed the original complaint.

Regarding Komron's defaults on the BECU Deed of Trust that occurred more than six years prior to the filing of the complaint, i.e., during the period between September 8, 2010, and April 28, 2011, neither party has given the Court appropriate calculations of the amounts that Shaun would allegedly be precluded by the statute of limitations from recovering.  For example, in the briefing, the parties have not addressed whether late fees that may be assessed pursuant to the Adjustable Rate Note,[10] docket no. 61-1, should be included in the calculation of the monthly payments.

---

[10] Regarding late charges, the Adjustable Rate Note states the following:
>   7.   BORROWER'S FAILURE TO PAY AS REQUIRED
>       (A)  Late Charges for Overdue Payments
>       If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.0000% of my overdue payment of principal and interest.  I will pay the late charge promptly but only once on each late payment.

Adjustable Rate Note at 3 (docket no. 61-1).

ORDER - 9

In addition, both the amortization table, docket no. 181-1, provided by the United States and the figures proffered by Shaun's counsel fail to consider that Komron was persistently defaulting on his payments and incorrectly assume that the monthly payments would remain constant while the principal balance would decrease each month. Well-established principles of finance and banking appear to tell us otherwise. Upon each default, the unpaid amount of interest and any late fees should be added to the principal balance, resulting in a necessary increase in the monthly payment amount because the interest component would be higher, not lower, and Komron would have fewer remaining payments within which to pay off the loan by September 2033. Using the standard amortization formula, namely $A = P \left( i (1+i)^n / ((1+i)^n - 1) \right)$, where A is the periodic payment amount, P is the principal balance, $i$ is the interest rate, and n is the number of payments remaining, the Court understands that the missed monthly payments during the period after Shaun acquired the BECU Deed of Trust and more than six years before the United States commenced this action are as follows, if late charges are excluded from the analysis:

| Payment Date | Payment Amount (recalculated each month as a result of default) | Amount To Be Credited to Interest If Paid | Amount To Be Credited to Principal If Paid | Ending Balance After Default |
|---|---|---|---|---|
| 10/01/2010 | $2,150.99 | $1,316.72 | $834.27 | $384,361.46 |
| 11/01/2010 | $2,163.09 | $1,321.24 | $841.85 | $385,682.70 |
| 12/01/2010 | $2,175.29 | $1,325.78 | $849.51 | $387,008.49 |
| 01/01/2011 | $2,187.59 | $1,330.34 | $857.25 | $388,338.83 |

ORDER - 10

| Payment Date | Payment Amount (recalculated each month as a result of default) | Amount To Be Credited to Interest If Paid | Amount To Be Credited to Principal If Paid | Ending Balance After Default |
|---|---|---|---|---|
| 02/01/2011 | $2,199.98 | $1,334.91 | $865.07 | $389,673.74 |
| 03/01/2011 | $2,212.47 | $1,339.50 | $872.97 | $391,013.25 |
| 04/01/2011 | $2,225.06 | $1,344.11 | $880.96 | $392,357.35 |

Applying late charges, the Court believes the missed monthly payments during the period at issue are as follows:

| Payment Date | Payment Amount (recalculated each month as a result of default) | Amount To Be Credited to Interest If Paid | Amount To Be Credited to Principal If Paid | Late Charge | Ending Balance After Default |
|---|---|---|---|---|---|
| 10/01/2010 | $2,150.99 | $1,316.72 | $834.27 | -- | $384,361.46 |
| 11/01/2010 | $2,163.09 | $1,321.24 | $841.85 | $107.55 | $385,790.25 |
| 12/01/2010 | $2,175.90 | $1,326.15 | $849.75 | $108.15 | $387,224.56 |
| 01/01/2011 | $2,188.81 | $1,331.08 | $857.73 | $108.80 | $388,664.44 |
| 02/01/2011 | $2,201.83 | $1,336.03 | $865.79 | $109.44 | $390,109.91 |
| 03/01/2011 | $2,214.95 | $1,341.00 | $873.95 | $110.09 | $391,561.01 |
| 04/01/2011 | $2,228.18 | $1,345.99 | $882.19 | $110.75 | $393,017.75 |

The parties also fail to address whether Shaun should be barred by the statute of limitations from recovering the entire amount of monthly payments missed prior to April 28, 2011, including the amount that would have been credited to principal if they

ORDER - 11

had been paid, or only the interest payments (and possibly late charges) that were due more than six years before this lawsuit began.

The Court now recognizes that, because Komron's default caused the principal balance of the BECU Deed of Trust to increase each month, it likely erred by using a simple interest calculation in concluding that "[t]he total interest on the BECU Loan is $127,721.52 as of September 30, 2018." See CL No. 27 (docket no. 94). Rather, the amortization formula yields an ending balance of $534,332.08 (without late charges) and $550,854.45 (with late charges), as of October 1, 2018. Subtracting the original principal balance of $383,044.74 results in either $151,287.34 as the total amount of interest or $167,809.71 as the total in interest and late fees. The same computational method indicates that the balance as of April 1, 2022, will be $617,170.27 (without late charges) and $647,211.20 (with late charges). What sum, if any, should be deducted from these figures in light of the statute of limitations remains unclear.

The parties are DIRECTED to meet and confer and submit a Joint Status Report to the Court by April 21, 2022, addressing the following issues: (1) whether late charges should be considered when calculating the amounts associated with the BECU Deed of Trust that are allegedly barred by the statute of limitations, (2) whether, considering that the principal balance of a mortgage remains unchanged and due throughout the life of the loan, the portions of the monthly payments that would have been credited to principal if paid are barred by the statute of limitations, (3) the total amount of interest due on the BECU Deed of Trust, (4) whether the Court's method for calculating the monthly payments owed on the BECU Deed of Trust are correct, and (5) the remaining balance on

ORDER - 12

the BECU Deed of Trust as of May 1, 2022.  If the parties do not agree on any matter, they may state their separate views in the Joint Status Report but shall not file any independent status reports or briefs.

### III.     Judicial Sale

Under 26 U.S.C. § 7403, once it is established that the United States has liens upon certain property, the United States may foreclose those liens, sell the property, and apply the proceeds toward the tax liens at issue.  United States v. Craft, 535 U.S. 274, 284 (2002); United States v. Rodgers, 461 U.S. 677, 693–94 (1983).  The United States may do so even if a third party, along with the delinquent taxpayer, holds an interest in the encumbered property.  26 U.S.C. § 7403(a); Rodgers, 461 U.S. at 699–700.  Under Rogers, district courts have limited discretion to not order a foreclosure sale under 26 U.S.C. § 7403.  Rogers, 461 U.S. at 706–12.  The discretion to preclude foreclosure "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes."  Id. at 711.

Shaun has failed to carry his burden of proof that this Court should exercise discretion not to issue a foreclosure order.  The United States has established that it has valid federal tax liens against the Subject Property, and therefore the United States is entitled to judgment and to foreclose those liens, sell the Subject Property, and apply the proceeds toward its tax liens.  26 U.S.C. § 7403.  The Court, however, will delay entering an order for judicial sale until after it has received the requisite Joint Status Report from the parties and has determined how to calculate the value of the BECU Deed of Trust.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The Court CONCLUDES as follows: (i) the 2005 Deed of Trust constitutes a fraudulent transfer under RCW 19.40.041 by clear and satisfactory evidence and accordingly voids the transfer, and (ii) the statute of limitations tolled on the BECU Deed of Trust on April 28, 2017, the day the complaint in this case was filed.

(2) The parties are DIRECTED to meet and confer and submit a Joint Status Report by April 21, 2022, addressing the issues outlined in the Court's Order.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 31st day of March, 2022.

Thomas S. Zilly
United States District Judge